# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LARRY RAY HOLMAN,

        Plaintiff,

  v.                                                    Case No. 04-C-0792

ELSA HORN, *et al.*,

        Defendants.

---

LARRY RAY HOLMAN,

        Plaintiff,

  v.                                                      Case No. 05-C-0009

DEANNA NAKADA, *et al.*,

        Defendants.

## DECISION AND ORDER

These consolidated cases are before the court on the parties' cross-motions for summary judgment. In Case No. 04-C-0792, Plaintiff Larry Ray Holman alleges that Defendant Elsa Horn prescribed medications that caused plaintiff to suffer internal bleeding and then intentionally ignored his internal bleeding from April 30, 2003 to May 21, 2003. Plaintiff also alleges that Defendant Roman Kaplan prescribed medications that he knew would cause liver damage, stomach pains, and internal bleeding for plaintiff. Finally, plaintiff alleges that Drs. Horn and Kaplan, as well as Defendant Nancy Bowens, were negligent in providing him with medical treatment. Plaintiff has moved for summary judgment, as have Drs. Horn and Kaplan. Due to an oversight on

the part of the court, Ms. Bowens was prematurely dismissed as a defendant on April 22, 2005. Accordingly, Ms. Bowens has not moved for summary judgment; she has, however, submitted an affidavit and proposed findings of fact supporting summary judgment in her favor. *See Spitz v. United States*, 432 F. Supp. 148, 150 (E.D. Wis. 1977) ("[A] court may grant summary judgment to a nonmoving party when it appears from the record that there is no factual dispute and the nonmovant is entitled to summary judgment as a matter of law.")

In Case No. 05-C-0009, plaintiff alleges that Defendant Deanna Nakada, Ms. Bowens, and Dr. Horn deliberately denied him treatment for his Hepatitis C and prescribed medications that caused various permanent and temporary injuries. Plaintiff alleges that whites with comparably advanced Hepatitis C received treatment while he (an African-American) did not. Plaintiff also alleges that Defendants Judy Smith, James Greer, and Thomas Edwards were in a position to control the other defendants, knew that the other defendants were violating his rights, and yet did nothing. For the following reasons, summary judgment will be granted in favor of all defendants in both cases.

## BACKGROUND

In considering the rather extensive record in this case, the court takes guidance from Civil L.R. 56.2, which sets forth the following procedures for summary judgment motions:

> Motions for summary judgment must comply with Fed. R. Civ. P. 56 and Civil L.R. 7.1. In addition, with the exception of Social Security reviews the following requirements must be met:
>
> (a) Motion. The moving papers must include either (1) a stipulation of facts between the parties, or (2) the movant's proposed findings of fact supported by specific citations to evidentiary materials in the record (e.g., pleadings, affidavits, depositions, interrogatory answers, or admissions), or (3) a combination of (1) and (2).

(1) The movant must present only the factual propositions upon which there is no genuine issue of material fact and which entitle the movant to judgment as a matter of law, including those going to jurisdiction and venue, to the identity of the parties, and to the background of the dispute.

(2) Factual propositions must be set out in numbered paragraphs, with the contents of each paragraph limited as far as practicable to a single factual proposition.

(b) Response. Any materials in opposition to a motion filed under this rule must be filed within 30 days from service of the motion and must include:

(1) A specific response to the movant's proposed findings of fact, clearly delineating only those findings to which it is asserted that a genuine issue of material fact exists. The response must refer to the contested finding by paragraph number and must include specific citations to evidentiary materials in the record which support the claim that a dispute exists.

(2) A party opposing a motion may present additional factual propositions deemed to be relevant to the motion, in accordance with the procedures set out in Subparagraph (a)(2) of this rule. These propositions may include additional allegedly undisputed material facts and additional material facts which are disputed and which preclude summary judgment.

. . .

(e) In deciding a motion for summary judgment, the Court must conclude that there is no genuine material issue as to any proposed finding of fact to which no response is set out.

In Case No. 04-C-0792, both plaintiff and defendants have filed documents titled as proposed findings of facts and responses thereto. However, plaintiff's proposed findings of fact are, in fact, not proposed findings of fact but arguments, most of them concerning matters tangential to the case. Plaintiff's responses to defendants' proposed findings of fact do not respond to those proposed findings as required by Civil L.R. 56.2(e). Accordingly, defendants' proposed findings of fact will be accepted as true.

3

In Case No. 05-C-0009, both parties have likewise filed proposed findings of fact. Plaintiff's proposed findings are hopelessly compound and, for the most part, not supported by specific citations to evidentiary materials in the record. Defendants have appropriately objected to the proposed findings in their responses. Plaintiff has not responded to defendants' proposed findings of fact. Accordingly, defendants' proposed findings of fact will be accepted as true.

Plaintiff Larry Ray Holman is an inmate held by the Wisconsin Department of Corrections ("DOC"). Plaintiff has suffered from asthma since at least 2001. (Docket #77 (Def.'s PFOF) ¶ 9.) Sometime prior to May 16, 2002, he tested positive for Hepatitis C. (*Id.* ¶ 10.) Plaintiff was admitted to the hospital on July 9, 2002, for upper gastrointestinal bleeding resulting from stomach ulcers. (*Id.* ¶¶ 9-11.) Plaintiff has documented liver damage that is consistent with a past history of alcohol and intravenous drug use in the presence of Hepatitis C. (*Id.* ¶ 69.)

Plaintiff was confined in the Kettle Moraine Correctional Institution ("KMCI") in Plymouth, Wisconsin, from July 5, 2001, through June 2, 2003. (Docket #77 ¶¶ 6, 25.) Defendant Elsa Horn is a physician employed by the Department of Corrections at KMCI. (*Id.* ¶ 2.) Dr. Horn is board certified in gastroenterology and internal medicine. (*Id.* ¶ 5.)

On May 16, 2002, Dr. Horn prescribed Vitamin E for plaintiff due to his Hepatitis C. (Docket #77 ¶ 10.) On July 11, 2002, Dr. Horn prescribed Protonix, an iron supplement, for plaintiff to treat his stomach ulcers. (Docket #77 ¶ 12.) On July 18, 2002, Dr. Horn prescribed a Serevent inhaler for plaintiff's asthma. (Docket #77 ¶ 13.) On August 6, 2002, Dr. Horn advised plaintiff not to take ibuprofen or aspirin due to the risk of stomach ulcers. (Docket #77 ¶ 13.)

On April 20, 2003, Dr. Horn responded to a Medical Services Request from plaintiff, who was complaining of light red blood in his stool. Dr. Horn responded that it could be a hemorrhoid

4

and that plaintiff should be seen by a nurse to determine whether he should be seen by a doctor. (Docket #77 ¶¶ 20-21.) Dr. Horn opines as a board-certified gastroenterologist that peptic ulcer bleeds produce black blood, rather than red blood, in the stool. (*Id.* ¶ 22.) Dr. Horn also opines that none of her orders for plaintiff can cause gastrointestinal bleeding. On May 20, 2003, plaintiff was seen by Dr. Charles Larson with complaints that he had an upset stomach like when he had his stomach ulcers. Dr. Larson's exam did not reveal anything abnormal. (*Id.* ¶ 24.)

Plaintiff was confined in the Oshkosh Correctional Institution ("OSCI") from June 3, 2003 through December 17, 2004. (Docket #77 ¶ 27.) Defendant Roman Kaplan is a physician employed by the Department of Corrections at OSCI. (*Id.* ¶ 28.) Defendant Nancy Bowens is an Advanced Nurse Practitioner in OSCI's Health Services Unit ("HSU"). (*Id.* ¶ 30.) Dr. Kaplan saw plaintiff at least thirteen times during the year and a half he was confined at OSCI. (Docket #77 ¶¶ 35-59.) Ms. Bowens saw him at least five times. (*Id.*) All in all, HSU staff at OSCI saw plaintiff at least sixty-one times during his confinement there. (*Id.* ¶ 60.)

Dr. Kaplan prescribed Ranitidine in response to plaintiff's complaints of heartburn on November 14, 2003. (*Id.* ¶ 39.) Dr. Kaplan prescribed an oral asthma medication for plaintiff on November 18, 2003. (*Id.* ¶ 40.) Dr. Kaplan prescribed Amitriptyline for plaintiff's chronic lower back pain on December 23, 2003. (*Id.* ¶ 41.) Dr. Kaplan explained the potential side effects of plaintiff's medications to plaintiff when he prescribed the medications. (*Id.* ¶ 62.) Prison regulations permitted plaintiff to refuse his medications. (*Id.* ¶ 65.)

At no time was Dr. Horn, Dr. Kaplan, or Nurse Bowens deliberately indifferent to plaintiff's medical condition. (Docket #77 ¶¶ 72-73, 76.) To the contrary, Drs. Horn and Kaplan opine, to a reasonable degree of medical certainty based upon their professional judgment and expertise, that

5

plaintiff was provided with appropriate medical care and was not denied medical care that resulted in further injury or infliction of pain. (*Id.* ¶ 70; Horn Aff. ¶ 31.) Ms. Bowens likewise opines, based upon her professional judgment and experience, that her treatment decisions and those of other HSU nursing staff were medically appropriate decisions based on objective findings for the symptoms about which plaintiff complained and were within the medically approved community standard of nursing care. (Docket #77 ¶ 71.)

In addition to his visits to the HSU while at OSCI, plaintiff was also sent to University of Wisconsin hospitals and clinics for consultations and procedures eleven times. (*Id.* ¶ 61.) Three of those visits were with Defendant Deanna Nakada, a certified physician's assistant. Since July 15, 2003, Ms. Nakada has been employed by the University of Wisconsin Medical Foundation, Inc. ("UWMF"), a private, non-profit medical education and research organization created pursuant to Wis. Stat. §448.08(6)(b). (Nakada PFOF ¶¶ 6-7.) Ms. Nakada's duties and responsibilities include the care and treatment of patients with the Hepatitis C virus, including prison inmates referred from the Wisconsin Department of Corrections. (Nakada PFOF ¶ 10.) Plaintiff was one such inmate.

During Ms. Nakada's first visit with plaintiff on May 27, 2004, plaintiff indicated that he was feeling "very well." (Nakada PFOF ¶ 29.) He also denied any abdominal pain, nausea, vomiting, fever, chills or night sweats. (*Id.*) Ms. Nakada later met with plaintiff on July 1, 2004. (*Id.* ¶ 36.) At his visit on July 1, plaintiff indicated he had been "feeling well." (*Id.* ¶ 39.) He also indicated that he had "no complaints about his health or any changes to report." (*Id.*) Ms. Nakada determined at this visit that plaintiff had lesions on his liver and recommended an MRI, which plaintiff received upon DOC approval. (*Id.* ¶¶ 40-47.) After reviewing the results of the MRI, Ms. Nakada recommended a liver biopsy, which the DOC also approved. (*Id.* ¶¶ 49-51.)

Plaintiff underwent a liver biopsy on October 19, 2004. (Nakada PFOF ¶ 50.) The purpose of the biopsy was to determine the degree of fibrosis (scarring) and the degree of hepatic inflammation of plaintiff's liver. (Nakada PFOF ¶ 28.) The degree of fibrosis is measured in terms of its "stage." (*Id.*) The fibrosis is rated on a scale of 0-4, with Stage 0 referring to a complete absence of any liver scarring. (*Id.*) The term "grade" is used to refer to the degree of hepatic inflammation. (*Id.*) Inflammation of the liver is graded on a scale of 0-4, with Grade 0 indicating the absence of any liver inflammation. (*Id.*) The results of plaintiff's liver biopsy revealed that plaintiff suffered from chronic Hepatitis C virus, Grade 1, and Stage 0. (Nakada PFOF ¶ 51.) Put another way, plaintiff had a complete absence of any liver scarring and had minimal inflammation. (*Id.*)

The DOC has guidelines that it uses to determine whether treatment is appropriate for patients with chronic Hepatitis C. (Docket # 144 ¶ 86.) Those guidelines provide that treatment will be given only to those patients whose biopsy results are Stage 2 or greater. (*Id.* ¶ 87.) The DOC's guidelines are consistent with Ms. Nakada's standard of care in treating private patients. (Nakada PFOF ¶ 60.) Ms. Nakada does not recommend treatment for patients whose biopsies reveal fibrosis below Stage 2 because the cost and side effects of the medication drastically outweigh any benefit it could provide to such patients.[1] (*Id.* ¶ 61-62.) Pursuant to the DOC's guidelines, plaintiff's request for Hepatitis C treatment was denied. (Docket #144 ¶ 92.)

---

[1] The approved and accepted treatment for Hepatitis C is a combination therapy of pegylated interferon and ribavirin. (Nakada PFOF ¶ 63.) This treatment produces side effects consistent with a person undergoing chemotherapy: fever, chills, headache, muscle aches, tiredness, nausea, vomiting, diarrhea, weight loss, hair loss, low blood counts, depression and serious anemia. (*Id.* ¶ 64); *see also Christy*, 216 F. Supp. 2d at 404 n.13. In contrast, a person with Hepatitis C who has low grade inflammation and low stage fibrosis may experience minimal, if any, symptoms of the virus. (*Id.* ¶ 65.)

Plaintiff saw Ms. Nakada for a third and final visit on November 2, 2004. (Nakada PFOF ¶ 54.) Ms. Nakada noted that plaintiff had mentioned that he experienced pain for five to six days following his liver biopsy. (*Id.* ¶¶ 51, 55.) At the time of the November 2 visit, however, plaintiff did not indicate the presence of or appear to be in any pain. (*Id.* ¶ 55.) In fact, he indicated that he was currently feeling "well." (*Id.* ¶ 54.) At no time did Ms. Nakada prescribe or administer medication of any kind to plaintiff.[2] (Nakada PFOF ¶¶ 32-33, 43, 66.) In fact, Ms. Nakada has no authority to commence any treatment on or to suspend any treatment to a prison inmate. (*Id.* ¶¶ 24-25.)

Judy Smith has been employed by the DOC since 1996 as the warden of OSCI. (Docket #144 (Defs.' PFOF) ¶ 76.) Although Warden Smith has general supervisory authority over OSCI operations as provided in the Wisconsin Statutes, she does not supervise the day-to-day operations of medical personnel at the various departments within OSCI. (*Id.* ¶ 78.) Warden Smith does not and is not qualified to provide medical services to inmates at OSCI. (*Id.* ¶ 79.) Warden Smith had no personal involvement with the medical care given to plaintiff. (*Id.* ¶ 80.)

Thomas Edwards is employed by the DOC as the Health Services Nursing Supervisor at OSCI. (Docket #144 ¶ 93.) He does not prescribe medication for inmates. (*Id.* ¶ 97.) Mr. Edwards did, however, give plaintiff information concerning the side effects of plaintiff's medications in response to plaintiff's request. (*Id.* ¶ 99.) At no time did Mr. Edwards neglect or deliberately ignore plaintiff's medical needs. (*Id.* ¶ 102.)

---

[2] Wis. Admin. Code § MEB 8.08 expressly provides that a physician assistant "may not prescribe or dispense any drug independently." Wis. Admin. Code § MEB 8.08(1).

8

James Greer has been employed since 2002 by the DOC as the Director of the Bureau of Health Services ("BHS") within the Division of Correctional Programs ("DCP"). (Docket #144 ¶ 103.) On May 24, 2005, Mr. Greer received a letter from plaintiff complaining about the effects of his medications and his not qualifying for chronic Hepatitis C treatment. (*Id.* ¶ 108.) After receiving plaintiff's May 24 letter, Mr. Greer spoke with the nursing coordinator, Sharon Zunker, and nurse practitioner, Pat Voermans, and reviewed the treatment guidelines. (*Id.* ¶ 109.) Based upon Mr. Greer's professional nursing judgment and his experience, to a reasonable degree of nursing certainty, plaintiff did not qualify for chronic Hepatitis C treatment based on the DOC guidelines. (*Id.* ¶ 113.) On June 13, 2005, Ms. Zunker copied Mr. Greer on the letter that she wrote to plaintiff in response to his letter to Mr. Greer. (*Id.* ¶ 111.)

## ANALYSIS

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Id.* at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend its case. *Id.* at 322-24.

In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion, however; there must be a *genuine* issue of *material* fact for the case to survive. *Id.* at 247-48. "Material" means that the factual dispute must be outcome-determinative under governing law.

*Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. A "genuine" issue of material fact requires specific and sufficient evidence that, if believed by a jury, would actually support a verdict in the nonmovant's favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**I. Section 1983 Claims**

The Eighth Amendment, which prohibits "cruel and unusual punishments," imposes a duty on prison officials to ensure that inmates receive adequate food, clothing, shelter, and medical care; prison officials also must take reasonable measures to guarantee an inmate's safety. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see also* U.S. Const. amend. VIII. A prison official's "deliberate indifference" to a prisoner's medical needs or to a substantial risk of serious harm to an inmate violates the Eighth Amendment, which is applicable to the states through the Fourteenth Amendment and enforceable through 42 U.S.C. § 1983. *See Farmer*, 511 U.S. at 828; *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).

The test for such a violation has two parts. *Farmer*, 511 U.S. at 834. First, the deprivation alleged must be "sufficiently serious" when viewed objectively. *Id.* The Eighth Amendment guarantees humane prisons, not comfortable ones. *Id.* at 832. To be liable, a prison official must deny the "minimal civilized measure of life's necessities" or create "a substantial risk of serious harm." *Id.* at 834. Second, the official must have acted out of "deliberate indifference" to the inmate's health or safety. *Id.* Deliberate indifference requires more than negligence; it requires that

10

the official know of, yet disregard, an excessive risk to the inmate's health or safety. *Id.* at 835, 837. Subjective knowledge of the risk is required: "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838. A mere difference of opinion as to how a medical condition should be treated does not give rise to a constitutional violation. *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001).

Defendants argue that they were not deliberately indifferent to plaintiff's medical needs. The court agrees. The record reflects great solicitude for plaintiff's medical needs on the part of defendants. The court also notes that no evidence support's plaintiff's contention that defendants' conduct created a substantial risk of serious harm to plaintiff. Plaintiff's contention that defendants prescribed inappropriate medication has no basis outside his own imagination. Plaintiff correctly alleges that he did not receive the hepatitis treatment that he desired. He was not, however, entitled to that treatment. *See, e.g., Kane v. Winn*, 319 F. Supp. 2d 162 (D. Mass. 2004) (holding that prison officials may constitutionally deny hepatitis antiviral treatment to inmates whose biopsies reveal fibrosis below Stage 2). In sum, there is no indication that defendants' treatment of plaintiff was anything other than appropriate under the circumstances. While plaintiff undoubtedly has serious health issues, these issues result from plaintiff's preexisting ailments rather than from defendants' treatment of those ailments. Accordingly, all defendants are entitled to summary judgment on plaintiff's Eighth Amendment claims.

Plaintiff's allegation that he was denied treatment given to white inmates because of his race (African-American) is frivolous. Not one shred of evidence suggests that race played a role in

11

plaintiff's treatment. Accordingly, the defendants in Case No. 05-C-0009 are entitled to summary judgment on plaintiff's equal protection claims.

**II. Malpractice Claims**

Under Wisconsin law, a plaintiff, in order to prevail in a medical malpractice action, must prove that a doctor or other health professional failed to exercise the degree of skill usually exercised by the average practitioner acting in same or similar circumstances. *Green v. United States*, 530 F. Supp. 633, 642 (E.D. Wis. 1982). Such proof requires the testimony of an expert witness. *Froh v. Milwaukee Medical Clinic, S. C.*, 270 N.W.2d 83, 87 (Wis. Ct. App. 1978). Because plaintiff has offered no such testimony, all defendants are entitled to summary judgment on his malpractice claims. The court further notes, however, that the record does not suggest, even to a layperson, that defendants' treatment of plaintiff was negligent in any way.

## CONCLUSION

For the foregoing reasons, defendants are entitled to summary judgment on all plaintiffs' claims in Case No. 04-C-0792.

**IT IS THEREFORE ORDERED** that plaintiff's motion for summary judgment (Docket #50) is hereby **DENIED.**

**IT IS ALSO ORDERED** that Defendants Horn and Kaplan's motion for summary judgment (Docket #75) is **GRANTED.**

**IT IS FURTHER ORDERED** that summary judgment on all plaintiff's claims is **GRANTED** in favor of Defendant Nancy Bowens in Case No. 04-C-0792.

The court also concludes that defendants are entitled to summary judgment on all plaintiff's claims in Case No. 05-C-0009.

12

**IT IS THEREFORE ORDERED** that plaintiff's motion for summary judgment (Docket #127) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Nakada's motion for summary judgment (Docket #133) is **GRANTED.**

**IT IS ALSO ORDERED** that Defendants Greer, Edwards, Smith, Horn and Kaplan's motion for summary judgment (Docket #142) is **GRANTED.**

Plaintiff filed a motion to compel (Docket #124) on July 18, 2005. The motion is incomprehensible and is accordingly **DENIED.**

Dated this 22nd day of September, 2005.

s/ William C. Griesbach
WILLIAM C. GRIESBACH
United States District Judge